IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| QUINTIN-JOHN D'AGIRBAUD, III, #A0265488, | ) ) ) | CIV. NO. 18-00021 JMS-RLP |
| Plaintiff, | ) ) | ORDER DISMISSING COMPLAINT IN PART |
| vs. | ) ) ) | |
| SARAH ALANZO, et al., | ) ) | |
| Defendants. | ) ) ) | |

## ORDER DISMISSING COMPLAINT IN PART

Pro se Plaintiff Quintin-John D'Agirbaud, III, is incarcerated at the Saguaro Correctional Center ("SCC"), in Eloy, Arizona. He complains of incidents that allegedly occurred while he was housed at the Halawa and Waiawa Correctional Facilities (respectively, "HCF" and "WCF"), before his transfer to Arizona. Plaintiff claims that Defendants[1] violated his constitutional rights when they allegedly failed to protect him from assault by other inmates, retaliated against him for filing grievances, illegally searched his locker, and denied him due process.

---

[1] Plaintiff names Defendants HCF Case Manager Sarah Alanzo, Residential Administrator Dovie Borges, and Warden Scott Harrington; Director of the Department of Public Safety ("DPS") Nolan Espinda and Institutions Administrator Shari Kimoto; WCF Administrator Teresa Miike, Chief of Security ("COS") Thomas Evans, and Warden Sean Ornellas, all in their individual and official capacities.

Plaintiff states colorable claims against Defendants Sarah Alanzo and Dovie Borges in Counts I and II, and a colorable First Amendment retaliation claim against Alanzo. These claims may be served and will require a response after service is perfected.

Claims alleged under the Fourth Amendment (Count IV), and claims alleged against all Defendants in their official capacities are DISMISSED with prejudice.

All other claims as alleged against all Defendants fail to state a claim, and these claims are DISMISSED without prejudice with leave granted to amend.

## I. SCREENING

Federal courts must conduct a pre-answer screening in all cases in which prisoners seek redress from a governmental entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss those claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

Screening under §§ 1915(e)(2) & 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The "mere possibility of misconduct" or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se prisoners' pleadings must be liberally construed and given the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Leave to amend should be granted if it is possible that the complaint's defects can be corrected. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II.  BACKGROUND[2]

On July 27, 2016, while incarcerated at HCF, Plaintiff wrote Defendant DPS Director Espinda to complain that violent, "closed [(sic)]custody" gang members are housed with non-violent, non-gang, medium and minimum custody inmates.[3] Espinda did not respond. Compl., ECF No. 1, PageID #7 (Count I).

On February 20, 2017, Plaintiff signed a "separtee" memorandum against alleged USO gang member Brian Aquino, whom Plaintiff accused of threatening him. *Id.* Defendant Alanzo allegedly informed USO gang leader "Levu" that Plaintiff had requested separation memoranda against Aquino and several other USO gang members. *Id.*

---

[2] Plaintiff's allegations of material fact are accepted as true and construed in the light most favorable to him. *See Nordstrom*, 762 F.3d at 908.

[3] DPS defines "close custody" inmates as those inmates with "long minimum sentences (21 years or longer), serious escape risks, and other types of inmate characteristics that may require higher controls in the general population." DPS Policy No. COR.18.01.4.2. They are normally housed in the general population, subject to heightened supervision protocols.

4

On March 17, 2017, Alanzo allegedly yelled loudly in front of other inmates that Plaintiff "better stop ratting on inmates in here. I'm the one doing your transfer packet, do you want it to take longer?" *Id.* Plaintiff immediately reported Alanzo's comments to Unit Team Manager Morreira[4] and Defendant Borges.

On March 18, 2017, close custody USO gang member Joel Pitts allegedly assaulted Plaintiff. Plaintiff says a guard witnessed this assault.

On April 4, 2017, Plaintiff wrote Morreira that Alanzo had a "personal vendetta towards [him]." *Id.*, PageID #8 (Count II). Plaintiff says Alanzo refused to initiate his reclassification and transfer packet because he had complained about her to her superiors on several occasions.

On April 5, 2017, Alanzo allegedly authorized close custody USO gang member Gaius Awong's transfer into Plaintiff's housing unit. Plaintiff says that Awong had "just [been] released from segregation for assaulting an inmate in another module." *Id.*

On April 8, 2017, Awong assaulted Plaintiff, allegedly on instructions from USO gang leader Levu. Plaintiff was hospitalized for a fractured index finger, nose, right orbital bones, and damaged upper vertebrae. Plaintiff thereafter grieved DPS's policy of holding close custody gang members with general

---

[4] Morreira is not named as a Defendant.

population inmates.  Defendants Borges, HCF Warden Harrington, and DPS Administrator Kimoto denied these grievances.

On May 19, 2017, Plaintiff was transferred to WCF.  On May 22, 2017, Plaintiff wrote WCF Administrator Miike to report his recent assault at HCF and seek assurances that he would not be assaulted or set up by other inmates at WCF for pressing charges against Awong.  Miike did not respond.  Although Plaintiff says he feared harm from Awong, Aquino, and Pitts, he does not allege that these inmates were incarcerated at WCF.  On May 26, 2017, Plaintiff told Case Manager Christy[5] that inmate Dean Kokobun told others that Plaintiff was a "rat" and said that "he is going to get it."  *Id.*, PageID #9 (Count III).

On July 17, 2017, Plaintiff wrote Defendant WCF COS Evans to express his concerns that he might be set up at WCF and requested to be moved to a different housing unit.  He received no response.

On July 26, 2017, Plaintiff ordered store items totaling $130.00.  Also on this date, guards searched Plaintiff's locker while he was attending a program.  On July 27, 2017, after allegedly receiving an anonymous tip ("kite"), guards searched Plaintiff's locker again while he was at work and found a "brown leafy substance."  *Id.*, PageID #11 (Count IV).  Plaintiff was removed from his work station and put

---

[5] Christy is not named as a Defendant.

in WCF's segregation unit for an investigation. Plaintiff completed a property receipt on which he listed the store items that he had ordered the day before. The guards told Plaintiff that they knew he had been set up by other inmates and that he should provide information regarding which inmates at WCF were involved with drugs. Plaintiff complied and was given a urinalysis, which tested negative for drugs, but he was later found guilty of a drug misconduct violation.

On July 28, 2017, Plaintiff was transferred back to HCF and housed in the segregation unit. He asked to have his store items transferred to HCF, or in the alternative, to cancel the order and have his account credited with a refund.

On August 1, 2017, Borges told him to "submit an inter-unit request via your case manager & unit manager" regarding his store items. *Id.*, PageID #14 (Count VI).

On August 23, 2017, Miike recalculated Plaintiff's classification points based on his drug misconduct and resultant termination from his WCF work assignment and transfer back to HCF. Plaintiff grieved Miike's calculation of his classification points, but Kimoto denied his grievance.

Plaintiff commenced this action on January 12, 2018, after he had been transferred to SCC. *See* Compl., ECF No. 1. He alleges five causes of action: Counts I and II, alleging the failure to protect him from assault under the Eighth

7

Amendment; Counts III, V, and VI, alleging the denial of due process under the Fourteenth Amendment; and Count IV, alleging an unreasonable search and seizure under the Fourth Amendment. *See id.*, PageID #7-15. He seeks damages, a transfer to the Laumaka Work Furlough Program, and injunctive relief requiring DPS to house close custody, violent gang members separately from other inmates. *Id.*, PageID #16 (Request for Relief).

## III. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

In addition, a plaintiff asserting a § 1983 claim must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). That is, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, thereby showing an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A.    Eleventh Amendment

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law."  *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (*quoting Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff is no longer incarcerated at HCF, WCF, or in Hawaii, and he does not allege that ongoing constitutional violations related to his claims are occurring in Arizona.  Thus, there is no basis for his prospective injunctive relief claims. Moreover, to the extent that he seeks declaratory relief, those claims are subsumed by his claims for damages.  *See Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) (explaining that a damages claim "necessarily entails a determination

whether the officers' alleged conduct violated [inmate's] rights," thus, a separate request for declaratory relief is subsumed by the damages action). Claims against Defendants sued in their official capacities are DISMISSED with prejudice.

## B.    First Amendment – Retaliation

Plaintiff does not allege a separate retaliation claim under the First Amendment. He alleges, however, that Defendant Borges retaliated against him by writing "demeening [sic] responses to my inquir[i]es and inferr[ing] it is my own fault that I was set-up because inmates don't like to be around me." Compl., ECF No. 1, PageID #2. He further suggests that Alanzo retaliated against him because he reported her conduct to her superiors.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote and citations omitted). A plaintiff can allege retaliatory intent by alleging a chronological time line of events from which retaliation can be inferred. *Watison*, 668 F.3d at 1114.

Plaintiff sufficiently alleges that Alanzo retaliated against him for reporting her for informing gang members that he had sought separation memoranda against them and that this did not advance any legitimate correctional goal.

Plaintiff fails to allege sufficient facts to support an inference that Borges or any other Defendant retaliated against him for engaging in protected conduct. To the extent Plaintiff alleges a retaliation claim against any Defendant beyond Alanzo, and this is unclear, such claims are DISMISSED without prejudice.

## C.    Fourth Amendment – Count IV

Plaintiff alleges Defendants violated his rights under the Fourth Amendment when guards searched his locker and/or cell outside of his presence and allegedly seized the contents. Plaintiff cannot state a claim under the Fourth Amendment regarding the searches of his locker and alleged seizure of his property because he retains no reasonable expectation of privacy in his cell or its contents. *See Hudson v. Palmer*, 468 U.S. 517, 536 (1984) (holding an inmate has no reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures). The loss "of privacy is an 'inherent incident[ ] of confinement.'" *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (citing *Bell v. Wolfish*, 411 U.S. 520, 537 (1979)). And, the "right of privacy in traditional Fourth Amendment terms is fundamentally

incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* (citing *Hudson*, 468 U.S. at 527).[6]  Count IV is DISMISSED with prejudice.

## D.  Fourteenth Amendment: Counts III, V, and VI – Due Process

Plaintiff alleges Defendants Miike, Thomas, Kimoto, and Borges violated his right to due process when (1) he was transferred from WCF to HCF after drug contraband was found in his locker; (2) he was not allowed to examine the written evidence against him *before* he was found guilty of the infraction; (3) his classification custody status was allegedly miscalculated; and (4) his property was not returned to him after his transfer.

### 1.  Counts III and V – No Liberty Interest

To state a due process violation, a plaintiff must first establish a liberty or property interest for which protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013).  If no protected liberty interest is

---

[6]  To the extent Plaintiff challenges the confiscation of his property without due process, that claim is addressed in Section D, subpart 2 below.

at stake, no process is required. *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). That is, if the challenged prison practice or sanction is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is no liberty interest directly under the Constitution. *Meachum*, 427 U.S. at 225; *see also Hewitt*, 459 U.S. at 466-70.

A state-created liberty interest may arise through state statutes, prison regulations, and policies. *Chappell*, 706 F.3d at 1063. But state liberty interests must be of "real substance," meaning freedom from restraint that (1) imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 478, 484, 487. And, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 222-23 (quoting *Sandin*, 515 U.S. at 484).

13

Plaintiff has no direct liberty interest in retaining a particular custody classification, remaining at a particular prison, being placed in community custody housing, or participating in rehabilitation or educational programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding prisoners have no liberty interest in a particular classification status or rehabilitation); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983) (holding prisoners have no right to remain in prison of choice or prevent a transfer); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985).

To the extent Plaintiff complains that his allegedly incorrect classification status has or will impact his early release on parole, Hawaii inmates have no direct or state-created liberty interest in release before the expiration of their sentences. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992) (holding same under Hawaii law); *Rideout v. Haw. Paroling Auth.*, 2014 WL 1571286, at *3 (D. Haw. Apr. 17, 2014) (recognizing that Hawaii's parole regime creates no liberty interest in parole and collecting District of Hawaii cases).

Finally, Plaintiff sets forth no facts suggesting that he has a state-created liberty interest "of real substance," because he has endured "atypical and

significant hardship," or showing that his reclassification will inevitably effect the duration of his sentence. *See Sandin*, 515 U.S. at 477-87. Plaintiff does not compare his conditions of confinement after his disciplinary infraction to those imposed on inmates in administrative segregation and protective custody (which likely comport with the prison's discretionary authority), to show that his conditions subjected him to atypical or significant hardship. *See Chappell*, 706 F.3d at 1064 (citing *Sandin*, 515 U.S. at 486-87). Plaintiff does not allege the duration of the challenged conditions, the degree of the restraint imposed, or claim that reclassification will invariably lengthen the duration of his sentence.

Because Plaintiff has no liberty interest in a particular classification status; programs; early release on parole or to a community housing unit; or in remaining at WCF, HCF, or in Hawaii, he has no right to the procedural due process requirements delineated in *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974). Counts III and V are DISMISSED without prejudice for failure to state a claim.

### 2. *Count VI – No Deprivation of Property Interest*

Plaintiff complains that Defendants confiscated and failed to return his store items and other unidentified property when he was returned to HCF on July 27, 2017. Plaintiff was given a receipt for his property, told that store items could not be transferred between facilities but could be mailed at his expense to another

or that he could arrange for the items to be picked up. *See* Compl., Exs. G-I.

Plaintiff instructed prison officials to mail his excess property to another

individual in Hilo, Hawaii, but apparently failed to pay the costs for postage.

After Plaintiff's property was not returned to him, he pursued a grievance

concerning the loss of his property and a state tort claim. Plaintiff now alleges the

confiscation of his property violated his right to due process.

The authorized, intentional deprivation of a prisoner's property is subject to

the procedural requirements of the Due Process Clause. *See Hudson*, 468 U.S. at

532 & 532 n.13; *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An

authorized deprivation is one carried out pursuant to established state procedures,

regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436

(1982); *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Authorized deprivations are permissible if carried out pursuant to a regulation that

is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482

U.S. 78, 89 (1987). The Due Process Clause is violated only when the agency

"prescribes and enforces forfeitures of property without underlying statutory

authority and competent procedural protections," *Nev. Dep't. of Corr. v. Greene*,

648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090

(9th Cir. 2003)) (internal quotations omitted).

The fundamental requirements of procedural due process are notice and an opportunity to be heard before the government deprives a person of a protected interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Plaintiff's attachments to his Complaint demonstrate that he received notice of the alleged confiscation, instructions how to retrieve the property by sending it to an outside address, instructed prison officials to mail the property to another but failed to pay the postage, grieved the incident, and initiated a tort claim with the Hawaii Department of Accounting and General Services. *See* Compl., Exs. G-I. This was all the process that Plaintiff was due. *See Greene*, 648 F.3d at 1019 (finding that inmate's due process rights were not violated when his typewriter was confiscated pursuant to a new prison policy because he was given notice of the policy change and ample time to comply). Count VI is DISMISSED with prejudice.

**E.    Eighth Amendment:  Counts I and II – Failure-to-Protect**

Plaintiff alleges Defendants violated his rights under the Eighth Amendment by failing to protect him from being assaulted and set up by other inmates.[7]

"'[P]rison officials have a duty . . . to protect prisoners from violence" because

---

[7]  Plaintiff names only Defendants Alanzo, Borges, Harrington, and Kimoto within Counts I and II.  Liberally construing the Complaint, the court will address these claims as if directed at all Defendants.

"[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (further citations omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

Prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; deliberate indifference occurs when an official acts or fails to act despite his subjective knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040. A prison official need not "believe to a moral certainty" that an inmate is at risk of harm, "before [he] is obligated to take steps to prevent such an assault," but he or she must have more than a "mere suspicion" that an attack will occur. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

The obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). However, "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007). To state a cognizable Eighth Amendment failure-to-

protect claim, an inmate must establish that: (1) "the deprivation alleged [is] objectively, 'sufficiently serious,'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); and (2) the prison official had a "'sufficiently culpable state of mind,'" that shows "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302-03). The prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### 1.    *WCF Defendants:  Warden Ornellas, Miike, and Evans*

Although Plaintiff alleges that he was set up by other inmates while at WCF, he was not assaulted while there nor otherwise subjected to cruel and unusual punishment within the meaning of the Eighth Amendment. Plaintiff fails to state a claim that WCF Defendants Warden Ornellas, Miike, and COS Evans violated his rights under the Eighth Amendment, and these claims are DISMISSED with prejudice.

### 2.    *Supervisor Liability:  Espinda, Harrington, Kimoto*

Supervisory officials are not liable under § 1983 for the actions of their subordinates "on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). "[A] prison official in a supervisory position may be held liable under § 1983 if he was personally involved in the constitutional

deprivation or a sufficient causal connection exists between his unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013). A sufficient causal connection can exist for the supervisor's: (1) own culpable action or inaction in the training, supervision, or control of subordinates; (2) acquiescence in the constitutional deprivation about which a complaint is made; or (3) conduct that showed a reckless or callous indifference to the rights of others. *Id.*; *Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012). Liability may also be imposed "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (internal quotation marks omitted); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). An individual's "general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

DPS Director Espinda's only apparent connection to Plaintiff's claims is a letter Plaintiff allegedly wrote him in July 2016, to complain about the DPS policy of housing close custody gang members with medium and minimum custody inmates. This is insufficient to show that Espinda failed to act on specific, articulable, subjective knowledge that Plaintiff might be assaulted eight months

later by USO gang members in general, or inmates Pitts and Awong in particular.

That is, Plaintiff fails to show that Espinda had even a "mere suspicion" that an

attack would occur against him due to the DPS policy. *Berg*, 794 F.2d at 459.

Defendants HCF Warden Harrington's and Kimoto's only apparent

connection to Plaintiff's Eighth Amendment claim is that they denied his

grievance regarding the DPS policy of housing close custody gang members with

other inmates in the general population. Plaintiff alleges no facts suggesting that

either Harrington or Kimoto knew of Plaintiff's specific fears regarding USO

inmates, or of Alanzo's alleged animus against him, which allegedly precipitated

the two assaults.

"Ruling against a prisoner on an administrative complaint does not cause or

contribute to the [underlying] violation." *George v. Smith*, 507 F.3d 605, 609-10

(7th Cir. 2007) (holding that only persons who cause or participate in civil rights

violations can be held responsible); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999) (holding that prison officials whose only roles involved the denial of the

prisoner's administrative grievances cannot be held liable under § 1983); *Wright v.

Shapirshteyn*, 2009 WL 361951, at *3 (E.D. Cal. Feb.12, 2009) (noting that

"where a defendant's only involvement in the allegedly unconstitutional conduct is

the denial of administrative grievances, the failure to intervene on a prisoner's

behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983"); *Velasquez v. Barrios*, 2008 WL 4078766, at *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").

Accordingly, Plaintiff's allegations are insufficient to state a claim against Harrington, Kimoto (or Borges, to the extent Plaintiff alleges liability against her for her participation in the grievance process). These claims are DISMISSED without prejudice.

### 3. Defendants Alanzo and Borges

Plaintiff alleges that Alanzo had personal animus against him because he reported her allegedly inappropriate comments and actions to her superiors. He claims that she informed a USO gang leader about his requests for separation from USO gang members, resulting in his first assault, and authorized USO member Awong to be housed with him thereafter, despite her knowledge of his fear of reprisal from USO members. Plaintiff further alleges that he informed Borges of Alanzo's "vendetta" against him and about his fear of USO gang members before the attacks, yet she apparently took no action. This is sufficient to state a failure-

to-protect claim under the Eighth Amendment. Counts I and II as alleged against Defendants Sarah Alanzo and Dovie Borges may proceed and be served.

## IV. **LEAVE TO AMEND**

The Complaint is DISMISSED in part. Leave to amend those claims dismissed without prejudice is GRANTED as limited above. Plaintiff may file an amended complaint on or before March 28, 2018, to attempt to cure the deficiencies in claims dismissed without prejudice. Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Hawaii. Local Rule LR10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. Any amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, submitted on the court's prisoner civil rights form, and will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928.

**IN THE ALTERNATIVE**:

In writing on or before March 28, 2018, Plaintiff may elect to stand on his claims against Defendants Alanzo and Borges in Counts I and II and First

Amendment retaliation claim against Alanzo as limited by this Order. On receipt of written notification, or if Plaintiff fails to timely submit an amended complaint, the court will order the present Complaint as limited by this Order served on Defendants Alanzo and Borges without further notice.

## V. <u>CONCLUSION</u>

(1) Claims in Counts I and II as alleged under the Eighth Amendment state plausible claims for relief against Defendants Sarah Alanzo and Dovie Borges in their individual capacities, and may proceed.

Although Plaintiff does not set forth a separate, specific count alleging retaliation, he states a plausible First Amendment retaliation claim against Defendant Sarah Alanzo in her individual capacity, and this claim may proceed.

(2) Claims against all Defendants in their official capacities, claims asserted against all Defendants under the Fourth Amendment in Count IV, and under the Fourteenth Amendment in Count VI are DISMISSED with prejudice.

(3) All other claims as asserted against all Defendants are DISMISSED without prejudice. Plaintiff may file an amended pleading that cures the noted deficiencies in any claims that have been dismissed without prejudice on or before March 28, 2018.

(4)  IN THE ALTERNATIVE, Plaintiff may notify the court in writing on or before March 28, 2018, that he elects to proceed with his claims against Defendants Sarah Alanzo and Dovie Borges as limited in this Order, and those claims shall be served.

(5) The Clerk is DIRECTED to send Plaintiff a prisoner civil rights complaint form so that he may comply with this Order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 26, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*D'Agirbaud v. Alanzo, et al.*, 1:18 cv 00021 JMS RLP;  Scrng '18 D'Agirbaud 18 21 jms (dsm 4th, 11th, 14th (dp); 8th & 1st st cl. )